# Field v. Schuster, Appellant.

*Contract—Sale—Acceptance—Delivery—Province of court and jury.*

In an action to recover the purchase price of goods sold and delivered, the case is for the jury where the evidence for the plaintiff tends to show that the property was inspected by defendant's agent at plaintiff's premises, that plaintiff was directed to deliver it on cars at the station, and that such delivery was made, while the defendant's agent testified that he examined the property on the plaintiff's premises, that some of it was defective, and that he refused to accept it unless it was delivered in the condition specified in the contract.

Performance according to the contract will be presumed where acceptance is made after an inspection, or an opportunity for inspection.

If a purchaser has an opportunity to examine goods when about to accept them, it is his duty so to do, and if he omits to exercise his privilege in that respect, he will not afterwards be permitted to object that his acceptance was without examination.

*Evidence—Cross-examination—Anticipation of defense.*

An offer of evidence is properly rejected, the purpose of which is to introduce the defendant's case in advance by a cross-examination of the plaintiff. The rejection of the offer, however, will not preclude the defendant from introducing testimony upon the subject.

*Contract—Sale—Evidence—Compromise.*

In an action to recover the purchase price of goods where the question in controversy is the delivery and acceptance of the goods, evidence as to overtures of compromise, and an attempt to settle after delivery, is inadmissible.

*Evidence—Witness—Credibility—Former trial.*

The testimony of a witness at a former trial of the same case is competent for the purpose of impeaching his testimony at the second trial.

*Contract—Sale—Measure of damages.*

Where there is a sale of specific property inspected and accepted by the defendant, as the plaintiff claimed, or if not accepted, delivered in cars in accordance with the terms of the contract, the measure of damages is the contract price of the goods sold. If the plaintiff fail to make out a case to the satisfaction of the jury on either of the grounds relied upon, he is not entitled to recover at all.

*Trial—Charge—Statement of facts—Harmless error.*

The appellate court will not reverse a judgment on a verdict because of an inadvertent misstatement of the evidence by the trial judge, where it is not clear that the misstatement did the defendant any harm, and the attention of the court was not called to it at the conclusion of the charge.

*Contract—Sale—Evidence.*

In an action to recover the purchase price of tobacco, defendant offered evidence tending to show that the tobacco was improperly handled because of the use of water to dampen it. The plaintiff in rebuttal offered to show

that it was a common practice so to treat tobacco, and that it was not prejudicial to its quality or condition.　*Held,* that the plaintiff's evidence was proper.

*Trial—Charge—Inadequate charge.*

A charge is not open to the criticism of being inadequate or partial, where it directs the attention of the jury in clear language to the controverted points in the case, leaves them free to dispose of the case under the evidence, and clearly states the legal principles controlling the case.

Argued March 9, 1904.　Appeal, No. 19, Feb. T., 1904, by defendant, from judgment of C. P. Tioga Co., April T., 1902, No. 98, on verdict for plaintiff in case of M. S. Field v. George J. Schuster.　Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.　Affirmed.

Assumpsit for goods sold and delivered.　Before OR-MEROD, P. J.

At the trial defendant made this offer :

The witness upon the stand, the plaintiff in the case, having testified that the tobacco was delivered in accordance with the contract and was undamaged and free from the kinds of tobacco mentioned in the contract to be excluded, it is now proposed to ask the witness if he did not afterwards assort this crop of tobacco and whether the total of the tobacco as assorted was not 11,703 pounds and that at least out of the 11,703 pounds there was found to be one ton of damaged tobacco ; to be followed by evidence showing that the tobacco if properly bundled would not become damaged.

Counsel for the plaintiff object to the offer as not being cross-examination and as being but an effort to inject into the plaintiff's case matters relating to the defendant's defense if relevant to the case ; and being but a bald attempt of that kind as shown by the offer with which they propose to follow this evidence ; and the evidence itself is only based on the offer upon evidence developed upon cross-examination which is more or less objected to for the reasons we now urge.

The Court: The conditions arising having occurred subsequent to the delivery of the tobacco the objection is sustained. [5]

This question was asked a witness :

Q. How much wet tobacco did you find when you came to assort it ?

Objected to as not evidence in this case. The court having refused to allow the defendant to go into the condition of the tobacco after the time of the alleged delivery of the tobacco by Mr. Field, the plaintiff, to the defendant having refused to allow the defendant to show the condition of the tobacco at the assorting time.

The Court: Counsel for the defendant having shown as a part of their defense that the tobacco being wet would remain wet and the condition of this tobacco subsequent to the time it was delivered not having been excluded by the court this evidence is admitted for the purpose of contradicting the evidence of the defendant in that regard : the only evidence excluded by the court on the part of the defendant was the offer to show the amount of fillers which was taken out of this tobacco when assorted ; it did not touch the question of the condition the tobacco was in as to damaged tobacco.

To which ruling by the court counsel for the defendant except and at their request this bill is sealed. [6]

To the request to strike out certain of plaintiff's testimony the court made the following ruling :

The Court : In connection with the testimony of the witness that all of this conversation was after the tobacco had been delivered we direct the testimony to be stricken out. This, however, not to preclude showing in rebuttal that the conversation occurred at some other time.

To which ruling by the court counsel for the defendant except and at their request this bill is sealed. [7]

A witness for defendant was asked these questions :

Q. You were sworn in a former trial of this case ? A. Yes, sir. Q. At that time did you not say this : Was not this question asked you and did you not make this reply ? Q. From your experience of what has been accepted and regarded as merchantable tobacco can you say unqualifiedly from such experience that this would have been regarded as unmerchantable? A. It is hard to say, because I have known some buyers to receive crops that has not been as good as this and didn't say anything, and then again receive crops that was better and give a reduced price. So there is both ways ; it is hard to say from experience.

Objected to for the reason that the question and answer pro-

posed to be given by the witness in substance simply amounts to the witness testifying that he has known certain tobacco buyers to pay the contract price for the tobacco rather than to get into litigation and have a lawsuit, it is simply showing that some people prefer to settle trouble than to litigate it; such a question ought not to be permitted to be asked to affect the merchantability of the tobacco; and there is nothing in the answer to the question now asked that the contract under which the tobacco was received was like the tobacco in question, and for the further reason that it is well known that shed burn, pole rot and damaged tobacco of all kinds is merchantable of its kind.

The Court: The witness having been called on the part of the defendant and having testified that after an examination of this tobacco that it is not merchantable, we think he may be asked as to whether or not he did not testify in the manner shown by the stenographic notes of testimony.

Objection overruled.

To which ruling by the court counsel for the defendant except and at their request this bill is sealed. [8]

George Hughes sworn for the plaintiff in rebuttal and examined by Mr. Marsh testified as follows:

Q. Where do you reside? A. Tioga township. Q. What experience have you had in growing and marketing tobacco? A. I have been a grower for twenty years. Q. What part of the work have you done? A. From growing the plant to putting it in the cases. Q. From your experience and observation as a tobacco grower what is the proper method of tobacco growers in handling tobacco which they have taken down when it is a little too dry to be handled easily?

Objected to because the question assumes that the proper custom of tobacco growers is to take it down when it is too dry; there is no such evidence.

Objection overruled.

To which ruling by the court counsel for the defendant except and at their request this bill is sealed. [12]

The court charged in part as follows:

[Now, if he did agree to take that tobacco he must take it; he cannot afterwards say that tobacco is not according to con-

tract, I won't pay for it; he is estopped from saying that after an examination of it; or such an examination as he could have made; if he had an opportunity to examine it he was bound to do so,] [3] and he says he went there for that purpose. He says that he did make an examination and discovered the condition of the tobacco. He says that he discovered it was damaged and not in conformity with the contract; so it cannot be pretended that he was deceived as to the condition of this tobacco; then the only question is, did he agree to take it? If he did there must be a recovery for the plaintiff in this case, for the full amount agreed upon at the time the tobacco was sold. If he did not accept that tobacco, then we come down to the question whether or not the tobacco was delivered in the condition, substantially as the contract provides for; because if this tobacco was not in the condition and of the character that this defendant by his agent, Allen, bought of Mr. Field, he is not obliged to take it and pay for it. What is the evidence in regard to that condition? A very large amount of evidence has been offered here for the purpose of showing you the manner in which this tobacco was cured. That evidence is important in a certain degree in determining whether or not it was properly cured. It is alleged by the defendant that because of the manner in which it was cured it could not be merchantable tobacco, and hence he was not obliged to take it; and to satisfy you of that proposition he has called a number of witnesses as to what was done in taking down this tobacco; the principle cause, they say, of injury to this tobacco was the sprinkling of water upon it; it is contended by the defendant that this ought not to have been moistened by artificial means; that it should have been left hanging in the lofts until it was in a proper condition to take down and strip by nature. A number of witnesses have been called who testify that manner was not the proper means of curing tobacco.

\*    \*    \*    \*    \*    \*    \*    \*

[If you find as matter of fact that the tobacco was not merchantable and up to the standard, and that the plaintiff in this case contracted for the delivery of a certain grade of tobacco, and if by the most careful and diligent kind of treatment he was not able to produce the character of tobacco he had agreed to, he is bound by the terms of his contract just the

same.] [4] If you get to this proposition this evidence may be of some assistance to you in determining whether or not this tobacco was merchantable, because it is the theory of the defendant that it could not be merchantable after having treated it with sprinkling. If you come to the conclusion that it was not merchantable, and that the defendant did not accept it he could not be held liable for its payment. As bearing upon the character of this tobacco as it was delivered there is the evidence of a number of witnesses who say that they did examine this tobacco in the car; and you heard their testimony, and the weight you give this testimony is entirely for you, and not for the court.

     \*     \*     \*     \*     \*     \*     \*     \*

Now, in construing a contract of this character you will construe it from the evidence as to what constitutes merchantable tobacco under a contract of this kind. It is not pretended by the defendant that there must be an absolute and entire absence of shed burn, or pole rot, but that it must be substantially absent. One witness in the case testified that he never knew of a crop of tobacco but what some would get in, because it was not possible to determine that until after it was assorted; and in construing contracts of this character they must be construed with some latitude and reasonableness; but there must be a substantial compliance with the terms of the contract. If these witnesses testify correctly there was but five pounds of wet tobacco in 12,650 pounds of tobacco; would you regard that as an important amount of damaged tobacco in so large a quantity; or was that a substantial compliance with the terms of the contract? Was that an unreasonable amount to have been found in 12,650 pounds of tobacco? You also have the testimony of one witness as to the amount of shed burn; while he gives an estimate of it which was taken out in this assorting, I understood him to say, but that is for you, there was about 250 pounds. Is that such a proportion of the whole amount, 12,650 pounds, as would materially effect the substantial compliance with the terms of this contract in the delivery of this tobacco? [If the plaintiff did substantially comply with this contract, and the tobacco he did deliver there was in compliance and conformity with the contract entered into between the parties, it makes no difference whether it was accepted or not.] [9] If he conformed

substantially with the terms of the contract and delivered this tobacco to the defendant, then he is entitled to recover, whether the defendant accepted it or not. If you conclude he accepted this tobacco you need not consider the question of its condition. Now, there is another feature in this case to which I think I should call your attention, and that is this: Was this tobacco delivered and was it accepted by the defendant? There is some evidence upon that proposition. [You will remember that some of the witnesses testify that Mr. Allen when he got into his wagon to go away told Mr. Field where to deliver this tobacco and that he would have a man there to receive it; you will remember that two loads were taken at once and immediately put into the car,] [10] and then that some loads were stored by reason of a car not being there, and as I remember it there was also some delay caused by a flood. [One of the witnesses, I think Mr. Spencer, says that he stored this tobacco in the car, that he received it and that he was employed to receive it by Mr. Allen, the agent of the defendant.] [11] Now, when Mr. Allen went into that car and found that tobacco was not in accordance with the terms of the contract it was his duty to immediately stop receiving that tobacco; he could not take that tobacco into his possession knowing the condition it was in, and then say to this man, " I shall not pay for it." Now, then, what did he do in reference to that? We have the testimony of Mr. Spencer that he received that tobacco; and the testimony of Mr. Allen that he went there and that he found this tobacco, shook out a handful of it, and said, " this is not the tobacco I bought and I will not accept it." As I understand the testimony Mr. Field was then loading this tobacco and kept on loading it. Mr. Field, the son of the plaintiff, says that he did not hear Mr. Allen say anything about the tobacco being wet. Mr. Allen says that right after this he saw the plaintiff standing some distance off but that he did not speak to him, but that he went to the office of Mr. Smith, an attorney, and put the matter in his hands. His conduct at that time is something from which you may determine as to whether or not he did receive that tobacco. If he did not intend to receive it and keep it does the fact that he did not go to Mr. Field when he saw him there and say to him, " this tobacco is not in accordance with our contract and I will not accept it," throw any light

upon this subject? Does the fact that he put the matter in the hands of an attorney for adjustment of the difficulty between him and Mr. Field throw any light upon this subject as to whether or not he did receive this tobacco? For we say to you if he did receive that tobacco and kept it in his possession he cannot now say he will not pay for it. He should have notified Mr. Field that he would not receive that tobacco and rescinded that contract. He must have intimated to him that he did not intend that tobacco should remain in his possession.

Did he give notice to the young Mr. Field that he would not accept that tobacco? If Mr. Field after he gave him notice that he would not accept that tobacco kept putting the tobacco in after he was notified he would not accept it, then Mr. Allen would not be bound by such an acceptance as that. This is all for you, gentlemen. But as I have already said to you, and I think I should repeat it, it makes no difference what occurred at the car, if at the time he examined this tobacco he had full knowledge of its condition and he agreed to take it under the terms of that contract.

Defendant presented these points:

1. Under the pleadings in this case there can be no question of the acceptance of the tobacco outside the terms of the contract. The only question is: did the plaintiff deliver the tobacco in accordance with the terms of the contract, to wit: "In a merchantable condition, free from shed burn, pole rot, or damaged tobacco." And unless the jury are satisfied from the weight of the evidence that the plaintiff did deliver the tobacco in a merchantable condition, free from shed burn, pole rot or damaged tobacco, the verdict must be for the defendant. *Answer:* This point is refused. If after an examination of the tobacco sufficient to satisfy the agent, Allen, of its condition, he agreed to accept it under the contract, the defendant is now estopped from denying that the tobacco did not conform with the terms of the contract. [1]

2. The plaintiff having testified that the contract was never changed or modified, he was under obligations to deliver the tobacco in a merchantable condition, free from shed burn, pole rot, or damaged tobacco, at Tioga depot; and unless the jury are satisfied from the evidence that he did so deliver it, the verdict must be for the defendant. *Answer:* This point

is refused for the reasons given in answer to the former point. [2]

Verdict and judgment for plaintiff for $1,443.71.    Defendant appealed.

· *Errors assigned* were (1, 2, 3, 4, 9, 10, 11) above instructions, quoting them ; (5–8, 12, 13) rulings on evidence, quoting the bill of exceptions ; (14) that the charge was inadequate and partial.

*D. W. Baldwin* and *David Cameron*, with them *F. B. Smith*, for appellant.

*S. F. Channell*, with him *F. E. Watrous* and *H. F. Marsh*, for appellee.

OPINION BY HENDERSON, J., July 28, 1904 :

The principal questions of fact developed at the trial of this case were :

First. Whether the defendant accepted the tobacco before delivery ; and ·

Secondly. Whether the plaintiff delivered it at the place and in the condition provided for in the contract.

Evidence was offered by the plaintiff tending to show that the defendant's agent, who acted in the purchase of the tobacco, came to the plaintiff's premises where the tobacco was stored and, after such inspection of it as he cared to make, accepted it and directed that it be weighed and delivered on the cars at the station.    Defendant's agent denied that he accepted the tobacco unconditionally and alleged that he only agreed to take it if it were delivered at the cars in the condition provided for in the contract.    That the defendant's agent went to the plaintiff's premises for the purpose of inspecting the tobacco and ascertaining whether it was in the condition called for in the agreement is admitted.    The agent testified that some of the bundles contained damaged tobacco and that he could not accept it unless it was delivered in the condition agreed upon.

The plaintiff claimed that after some discussion as to condition the agent accepted it and directed that it be delivered at the station.

The court submitted the question of acceptance to the jury with proper instructions.   There can be no doubt of the liability of the defendant for the tobacco if accepted by him whether it was inspected or not, in the absence of any concealment or fraud on the part of the plaintiff.   The contract of sale does not name the place at which the inspection of the tobacco was to be made.   In the absence of any action of the purchaser indicating a different place the place of delivery would be that at which the inspection would properly be made.   In the present case, however, the parties seem to have understood that the inspection was to be made at the tobacco house and that would seem to have been the most convenient place for that purpose inasmuch as the delivery at the station was to be made on the cars.   Very clearly, therefore, if the property was inspected by the defendant's agent and the plaintiff directed to deliver it on the cars at the station and such delivery was thereafter made, defendant's liability was fixed.   Performance according to the contract will be presumed where acceptance is made after an inspection or an opportunity for inspection. The learned judge was not in error, therefore, in his answers to the defendant's first and second points.

The defendant was also bound, if the plaintiff delivered the tobacco on the cars in the condition stipulated for in the contract.   The sale was of a specific lot of tobacco and compliance with the terms of the contract taking into consideration the character of the merchandise, was the measure of the plaintiff's duty.   That the tobacco was weighed and delivered on the cars at the place provided for in the contract is not disputed. Much evidence was introduced in regard to its condition. The instruction of the court to the jury on the obligation of the plaintiff to deliver the tobacco in the condition agreed upon and of the exemption of the defendant from liability unless such delivery was made, was correct and clear and could not have been misunderstood.

The portion of the charge contained in the third assignment of error should be read in the light of the context.   The subject under consideration was the alleged acceptance of the tobacco by the agent of the defendant.   The jury was instructed that if the agent, after having come for that purpose, examined the tobacco and accepted it, the defendant would not

afterward be heard in his refusal to pay therefor. In that connection the court instructed the jury that if the defendant had an opportunity to examine the tobacco when about to accept it, it was his duty so to do, and if he omitted to exercise his privilege in that respect he would not afterward be permitted to object that his acceptance was without examination. In the connection in which the excerpt from the charge was used it was a correct statement of the law—Fogel v. Brubaker, 122 Pa. 7— and had not the effect to make the defendant liable for the price of the tobacco regardless of its condition; nor was it an instruction that the defendant was bound to examine the tobacco at the tobacco house except as bearing upon the question of the acceptance of the tobacco at the time of the examination.

That portion of the charge contained in the fourth assignment of error, when read in its connection, does not sustain the interpretation placed upon it by the learned counsel for the appellant. The instruction was direct and positive that the plaintiff was bound by the terms of his contract; that if the tobacco was not merchantable or if the defendant did not accept it he could not be held liable for its payment. An amplification of the charge would not have made this direction clearer.

We are not persuaded that the court erred in rejecting the offer made in the fifth assignment. The evident purpose of the offer was to introduce the defendant's case in advance by a cross-examination of the plaintiff. The evidence presented by the plaintiff at that stage of the case did not authorize the introduction of the evidence contained in the offer. The fact that an additional reason for this objection was given by the court is not ground for reversal.

The principal objection of the defendant to the condition of the tobacco was that it was " damp " or " wet," that condition being caused by the use of water in the process of handling the tobacco by reason of which it was liable to rot and was not merchantable. It was responsive to this contention to show that soon after the time when the tobacco was delivered at the cars it was sorted and that there was a very small quantity of " wet" tobacco found therein. It is a misapprehension of the action of the court to assume that the defendant was not per-

mitted to show the condition of the tobacco at the time it was sorted. The rejection of the offer to cross-examine the plaintiff upon that subject did not preclude the defendant from introducing testimony upon that point.

The court was not in error in striking out the evidence referred to in the seventh assignment. It related to overtures of compromise and an attempt to settle after the delivery of the tobacco in the cars and would not enable the jury to determine what the condition of the tobacco was or whether there had been an acceptance at the tobacco house by the defendant.

The witness Burgh testified that from his knowledge of tobacco, the examination he had made of other crops and the experience he had had he thought the plaintiff's tobacco was " not quite" merchantable. His testimony at a former trial of the same case was clearly competent for the purpose of impeachment as his testimony at that trial indicated that he had not a clear view as to what was merchantable tobacco.

On either of the grounds for recovery relied upon by the plaintiff the instruction of the court on the measure of damages was correct. The sale was of specific property, inspected and accepted by the defendant, as the plaintiff claimed, or if not accepted, delivered in cars in accordance with the terms of the contract. From the plaintiff's standpoint there was a complete performance of the contract and if entitled to recover anything he was entitled to recover the contract price of the goods sold. If he failed to make out a case to the satisfaction of the jury on either of the grounds relied upon he was not entitled to recover at all under the evidence. The jury having found in his favor the verdict was properly for the consideration named in the agreement. The cases cited by the appellant related to executory contracts for the sale of goods not specific and are not applicable to the case as presented by the plaintiff.

We do not consider the error of the court with reference to the time of delivery of the first two loads of tobacco prejudicial to the defendant. The plaintiff proceeded immediately to load part of the tobacco on wagons and that part was delivered a few days thereafter. It does not appear that the inadvertent misstatement of the evidence on this point did the defendant any harm, and if the matter was considered important the at-

tention of the court should have been called to it at the conclu-
sion of the charge.

The court was substantially correct in referring to the testi-
mony of the witness Spencer which is the eleventh assignment
as will appear from portions of his testimony:

Q. State whether or not you were called upon at any time
to do anything with this Field crop of tobacco that has been
sworn to. A. Yes. Q. What was it? A. I was employed
to store it in the car. . . . Q. You say you were employed to
load this car? A. Yes. Q. For whom were you working?
A. Mr. Allen.

The defendant having offered evidence tending to show that
the tobacco was improperly handled when it was taken down
because of the use of water to dampen it, the evidence was
competent in rebuttal to show that it was a common practice
to so treat tobacco and that it was not prejudicial to its quality
or condition.

The evidence as set forth in the thirteenth assignment of
error was not admissible. The contract was for merchantable
tobacco. The sale was not made by sample and there was no
warranty of the quality beyond that implied in the contract.
It was not alleged that all " filler " is damaged tobacco and the
plaintiff was not bound by his contract for the limited percent-
age of " filler leaf."

We are not persuaded that the charge of the court as a
whole is so inadequate or partial as to warrant the criticism
pronounced upon it by the learned counsel in their argument.
It directed the attention of the jury in clear language to the
controverted points in the case, left them free to dispose of the
case under the evidence and clearly stated the legal principles
controlling the case. We are of the opinion that the assign-
ments of error should be overruled and the judgement af-
firmed.